```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS MACK, JR.,

                Plaintiff,              1:18-cv-00265-MAT
        -v-                             **DECISION AND ORDER**


COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____
```

**INTRODUCTION**

Thomas Mack, Jr. ("Plaintiff"), represented by counsel, brings this action under Title XVI of the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

**PROCEDURAL BACKGROUND**

On August 11, 2014, Plaintiff protectively filed an application for SSI, alleging disability as of March 6, 2014, due to major depressive disorder and posttraumatic stress disorder ("PTSD"). Administrative Transcript ("T.") 56. The claim was initially denied on June 24, 2014. T. 68-78. At Plaintiff's request, a video hearing was conducted on July 8, 2016, in Falls

Church, Virginia, by administrative law judge ("ALJ") Rosanne M. Dummer with Plaintiff appearing with his attorney via video conference in Seneca, New York. A vocational expert ("VE") also testified. T. 30-54. The ALJ issued an unfavorable decision on August 3, 2016. T. 9-29. Plaintiff appealed the decision to the Appeals Council, which denied Plaintiff's request for review on December 21, 2017, making the ALJ's decision the final determination of the Commissioner. T. 1-4. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 416.920(a).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. T. 14.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: degenerative disc disease, obstructive sleep apnea, depression, anxiety, and alcohol dependence. *Id*. The ALJ also noted the record contained reference to hypertension, gastroesophageal reflux disease ("GERD"), and attention deficit hyperactivity disorder ("ADHD"). However, the ALJ determined that Plaintiff's hypertension and GERD were medically managed and would not cause more than a slight work-related limitation and thus were non-severe. The ALJ further found that

2

Plaintiff had not been formally tested for ADHD and thus ADHD was not a medically determinable impairment. *Id.*

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 20. The ALJ specifically considered Listing 1.04 (Disorders of the Spine), Listing 3.10 (Sleep-related Breathing Disorders), Listing 12.04 (Depressive, Bipolar and Related Disorders), Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders), and Listing 12.09 (Substance Addiction Disorders). T. 14-16.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), with the following limitations: can lift/carry fifty pounds occasionally and twenty-five pounds frequently; can sit approximately six of eight hours; can stand or walk approximately six of eight hours; can occasionally climb, balance, stoop, kneel, crouch and crawl; should avoid work hazards (i.e., unprotected heights and dangerous moving machinery); can understand, remember, and carry out simple instructions commensurate with unskilled work; can sustain attention and concentration for two-hour segments of time during an eight-hour workday; can tolerate brief and superficial contact with others; and can adapt to changes in the work place for simple unskilled work. T. 16.

At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a dishwasher/kitchen helper or recycler. T. 23.

At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are unskilled jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the medium level representative occupations of dining room attendant, janitor, and laundry worker; the light level representative occupations of routing clerk, retail marker, sorter, electronic assembler, mail sorter, and press tender; and the sedentary level representative occupations of mail sorter, table worker, and eyeglass polisher. T. 24. The ALJ accordingly found that Plaintiff was not disabled as defined by the Act. T. 25.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence

4

as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted for the following reasons: (1) the physical RFC finding is not supported by substantial evidence because it is not supported by any competent medical opinion; and (2) the mental RFC finding is affected by legal error because the ALJ failed to adequately evaluate the individualized nature of Plaintiff's stress.

**I. The Physical RFC Finding Is Supported By Substantial Evidence**

Plaintiff argues the physical portion of the RFC finding is unsupported by substantial evidence because there is no "competent" medical opinion of record pertaining to Plaintiff's physical limitations on which the ALJ could rely. Plaintiff further argues the ALJ erred by not ordering a consultative examination to evaluate Plaintiff's physical limitations, in light of the lack of

5

suitable opinion evidence. For the reasons set forth below, the Court finds Plaintiff's argument lacks merit.

### A. The Evidence of Record Pertaining to Plaintiff's Physical Impairments

Plaintiff first applied for SSI alleging disability due to major depressive disorder and posttraumatic stress disorder ("PTSD"). T. 56. During the initial application process, Plaintiff completed a Function Report dated April 25, 2014. T. 170-80. Notably, he detailed limitations stemming from his alleged mental impairments and his activities of daily living. In the section pertaining to abilities affected by physical limitations, Plaintiff wrote "N/A" next to every ability. T. 175-76. Accordingly, during the initial application process, the Social Security Administration ("SSA") obtained Plaintiff's mental health records and ordered a consultative psychiatric evaluation. *See* T. 57-58. A physical consultative examination was not ordered and medical records pertaining to Plaintiff's physical condition were not sought. Following the initial denial of benefits and prior to the administrative hearing, Plaintiff submitted several years of medical records from his primary care provider, Lifetime Health Medical Group. *See* T. 380-520, 532-52.

At the administrative hearing held on July 8, 2016, Plaintiff testified that he recently started having back problems that were serious enough to interfere with his ability to work. T. 35. He testified that he was taking Norco for his back pain and that his

6

doctor recommended physical therapy, but it made his pain worse. T. 37. Plaintiff testified he was able to walk between two and five minutes at a time before feeling sharp pain in his back; he could stand for approximately five minutes before needing to sit down. *Id*. Plaintiff testified his back pain was limited to his lower back, but at times he also had numbness in his right leg. T. 41. Plaintiff further testified sitting caused him immediate pain. T. 42. Plaintiff testified he was able to crouch and change positions without much difficulty, though he had some difficulty bending to the floor when he was in pain. T. 42-43. At the completion of the hearing, Plaintiff's attorney noted that there was no medical opinion of record assessing Plaintiff's physical limitations and suggested one would be necessary to make a determination on Plaintiff's functional capacity. T. 53.

Following the hearing, Plaintiff submitted a letter from his primary care provider, Physician's Assistant ("PA") Michael Brynildsen dated April 8, 2015. The letter stated, "To whom it may concern, Due to his current conditions, [Plaintiff] cannot due [*sic*] any physical task or job. If you require any additional information please do not hesitate to contact our job [*sic*]." T. 723-24.

In her decision, the ALJ found that PA Brynildsen's opinion was entitled to "minimal" weight. T. 22. The ALJ reasoned that the opinion was conclusory, provided no explanation of the evidence it relied on, and was inconsistent with PA Brynildsen's own treatment

7

notes. *Id*. In particular, the ALJ noted that PA Brynildsen's treatment notes showed full strength in Plaintiff's bilateral lower extremities and negative straight leg raising tests. *Id. referring to* T. 506, 536, 546, 551.

In addition to assessing PA Brynilsen's opinion, the ALJ provided a thorough summary of Plaintiff's lower back pain treatment in her decision. *See* T. 18-20. Plaintiff first complained of back pain in September 2014. Treatment provider PA Michele Nanni assessed sciatica and advised Plaintiff to rest and apply ice and/or heat treatment. Plaintiff declined muscle relaxers and PA Nanni provided a referral to physical therapy. T. 392. In October 2014, Plaintiff attended physical therapy. Plaintiff's lumbar range of motion was full in nearly all directions and he was assessed as having excellent rehabilitation potential. T. 397-98. At a follow-up appointment with PA Nanni in October 2014, Plaintiff reported he did not notice much improvement from physical therapy and admitted he was not doing the home exercises and stretches. T. 400.

On January 13, 2015, Plaintiff reported continued back pain to PA Brynildsen, who assessed lumbar radiculopathy and prescribed tramadol and gabapentin. T. 411-13. On January 19, 2015, Plaintiff was discharged from physical therapy due to noncompliance. The physical therapist noted his discharge prognosis was "good." T. 417. In June 2015, PA Brynildsen prescribed Norco for Plaintiff's back pain and referred him to a neurosurgeon. T. 453-

8

56. At a neurology consultation, Plaintiff showed tenderness to palpation in the right sacroiliac joint and decreased sensation in the right thigh. Straight leg raise tests were positive on the right side. The examining nurse practitioner opined Plaintiff's pain was related to changes in his right hip joint and referred him to pain management. T. 463-64. As of October 2015, Plaintiff had not followed through with pain management and was noncompliant with several medications including Citalopram, Clonazepam, Flexeril, and Metoprolol Succinate. T. 485-86. In March 2016, PA Brynildsen noted that Plaintiff's chronic low back pain was secondary to his weight and that Plaintiff needed to work on weight loss. He also noted Plaintiff reported he had no improvement from pain management and had not followed up with neurosurgery. T.533-34.

In April 2016, Plaintiff began physical therapy with Amherst Orthopedic Physical Therapy, but attended only two sessions. Plaintiff reported he did not complete his home exercises and was not attending sessions due to scheduling issues. T. 542. On May 23, 2016, Plaintiff was discharged after four no-shows. The physical therapist noted that Plaintiff was no longer making progress toward functional goals and there was no expectation that he would progress toward those goals. T. 543.

The ALJ also noted multiple objective findings in her decision pertaining to Plaintiff's back pain. *See* T. 20. A January 2015 lumbar study showed a mild disc bulge. T. 419. An August 2015 lumbar study showed a small disc herniation at L5-S1 with left

9

neuroforaminal stenosis without any significant spinal cord impingement. T. 464. An August 2015 MRI of the pelvis showed angulation at the sacrococcygeal junction, representing possible old posttraumatic change and a tiny hernia containing fat. T. 470. Several physical exams showed some tenderness in the lower back with full strength and negative straight leg raising tests bilaterally. T. 426, 501. Ultimately, the ALJ found that the overall evidence of record did not support the degree of functional limitations Plaintiff alleged and imaging was not suggestive of work-precluding limitations. T. 20.

### B. The ALJ Permissibly Made A Common Sense Judgment About Plaintiff's RFC

When assessing a disability claim, an ALJ has the responsibility of determining a claimant's RFC based on all of the relevant medical and other evidence of record. *See* 20 C.F.R. §§ 416.927(d)(2), 416.945(a), 416.946(c); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the ultimate responsibility to determine a claimant's RFC rests solely with the ALJ). An RFC finding need not correspond to any particular medical opinion; rather, the ALJ must weigh and synthesize all evidence available to render an RFC finding that is consistent with the record as a whole. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999) ("the ALJ's RFC finding need not track any one medical opinion"). Furthermore, where "medical evidence shows relatively minor physical impairment, an

ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Glena v. Colvin*, No. 1:15-cv-00510(MAT), 2018 WL 739096, at *4 (W.D.N.Y. Feb. 6, 2018) (internal citation and quotation marks omitted).

Although the ALJ found that Plaintiff has "severe" impairments, the treatment notes and recommendations provided by Plaintiff's treatment providers regarding his physical impairments do not reflect disabling functional limitations and thus, it was not impermissible for the ALJ to render a common sense judgment regarding Plaintiff's physical functional limitations. *See Glena*, 2018 WL 739096, at *5. The ALJ noted mild imaging findings, consistent examinations showing full strength and nearly full range of motion in all areas, and repeated instances of Plaintiff's noncompliance with treatment recommendations, physical therapy, and medications. T. 20. Notably, Plaintiff's physical therapy providers assessed him as having excellent rehabilitation potential, provided that he continue physical therapy. Furthermore, the ALJ noted that no treatment provider expressed any overt concern regarding Plaintiff's physical impairments other than Plaintiff's need to lose weight, restrict calories, and increase physical activity. T. 21. Courts have found that a claimant's receipt of only conservative treatment, or decision to not seek treatment, can undermine the credibility of the claimant's subjective complaints. *Glena*, 2018 WL 739096 at *5 (*citing Lovell v. Colvin*, 137 F. Supp.3d 347, 354 (W.D.N.Y. 2015) (finding that claimant's

"particularly conservative medical treatment for both his back condition and psychological disorder indicates that [he] is not as restricted as he claims")). Accordingly, the Court finds that the ALJ had ample evidence available to her to render a commons sense judgement regarding Plaintiff's physical limitations and functional abilities, and further finds that her physical RFC finding is supported by substantial evidence.

The Court also does not find that the ALJ committed legal error by determining that a consultative physical examination was not necessary. *See id.* (ALJ did not commit legal error where the medical evidence, combined with plaintiff's statements, indicated relatively mild physical impairment, allowing the ALJ to make an RFC assessment without an expert medical opinion). Accordingly, the Court finds that remand is not warranted on this basis.

**II. The Mental RFC Finding Is Supported by Substantial Evidence**

Plaintiff further contends that the mental portion of the RFC finding is unsupported by substantial evidence because the ALJ did not specifically evaluate the individualized nature of Plaintiff's ability to handle stress. For the reasons set forth below, the Court finds this argument lacks merit.

**A. The Opinion of Consultative Examiner Dr. Gregory Fabiano**

On June 16, 2014, Plaintiff underwent a psychiatric evaluation by consultative examiner Dr. Gregory Fabiano. T. 334-38. Plaintiff reported he is able to dress, bathe, and groom himself; cook and prepare food; do general cleaning; do laundry; shop; and take

12

public transportation. T. 336. He reported he can "sort of" manage money. He reported he has "only one" friend and that his family relationships are "not good." Plaintiff reported lying in bed if he does not have group therapy sessions. T. 337.

Upon examination, Plaintiff's demeanor and responsiveness to questions was cooperative. His manner of relating, social skills, and overall presentation were adequate. Plaintiff appeared well groomed, casually dressed, and exhibited appropriate eye contact. T. 335. Plaintiff's speech was fluent, his thought processes were coherent and goal directed and he was oriented to person, place, and time. He presented a flat affect and neutral mood. Dr. Fabiano noted that Plaintiff's attention and concentration were mildly impaired, perhaps due to some anxiety or nervousness in the evaluation. He was able to complete counting tasks and simple calculations, but he did not attempt the serial threes task. T. 336. Plaintiff's recent and remote memory skills were impaired. He was able to recall two of three objects immediately and one of three objects after five minutes. Dr. Fabiano speculated this may have been due to Plaintiff's emotional distress secondary to his depressed mood. Plaintiff's intellectual functioning appeared average with a somewhat limited general fund of information. Dr. Fabiano reported Plaintiff had good insight and judgment. *Id*.

Dr. Fabiano opined that Plaintiff did not appear to have any limitations in his ability to follow and understand simple directions and instructions, perform simple tasks independently,

13

maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions. T. 337. Plaintiff had mild limitations in his ability to maintain attention and concentration and relate adequately with others. Dr. Fabiano further opined that Plaintiff appeared to have moderate limitations in his ability to appropriately deal with stress due to psychiatric symptoms. Dr. Fabiano opined the results of the examination were consistent with psychiatric problems, but in itself, that did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. *Id*.

In her decision, the ALJ gave Dr. Fabiano's opinion "some" weight. T. 22. The ALJ noted that the overall record does not corroborate work-precluding mental limitations and that the mental status examination was essentially normal with the exception of mild memory, attention, and concentration problems. T. 23.

### B. The ALJ Had No Duty to Specifically Evaluate the Individualized Nature of Plaintiff's Stress

Plaintiff does not take issue with the ALJ's weighing of Dr. Fabiano's opinion, which included a moderate limitation in his ability to appropriately deal with stress. However, Plaintiff does dispute the ALJ's lack of specific analysis pertaining to the nature of Plaintiff's stress and the circumstances that trigger it. To support his argument, Plaintiff relies on *Stadler v. Barnhart*, 464 F. Supp.2d 183, 188-89 (W.D.N.Y. 2006) ("Because stress is 'highly individualized,' mentally impaired individuals 'may have

14

difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work.") (citing Social Security Ruling ("SSR") 85-15 (S.S.A.), 1985 WL 56857 at *6 (1985)). In response, the Commissioner argues that the ALJ had no duty to further evaluate Plaintiff's stress because she did not adopt Dr. Fabiano's opinion in its entirety and only gave it "some" weight. For the reasons discussed below, the Court finds no error with the ALJ's mental RFC finding or assessment of Plaintiff's ability to handle stress.

In the RFC finding, the ALJ determined that secondary to his mental impairments, Plaintiff was capable of understanding, remembering, and carrying out simple instructions commensurate with unskilled work; sustaining attention and concentration for two-hour segments of time during an eight-hour workday; tolerating brief and superficial contact with others; and adapting to changes in the workplace for simple unskilled work. T. 16. The ALJ noted that her inclusion of brief and superficial contact with others, unskilled work, and the ability to sustain concentration and attention for two-hour segments of time accounted for Plaintiff's mental impairments and was favorable to Plaintiff. T. 23. Furthermore, the ALJ noted that Plaintiff's medical records reflected a treatment regimen that was consistent with the RFC finding. *Id*.

The Court finds the ALJ's determination was supported by substantial evidence in the record that Plaintiff's mental impairments cause no more than mild limitations in his ability to handle stress. In February 2015, Plaintiff was discharged from mental health treatment for noncompliance and "very spotty" attendance. T. 718, 721. In late 2015 and 2016, Plaintiff was discharged from treatment because he refused alcohol counseling and did not take medications as prescribed. T. 376, 524-25. The ALJ specifically found that no evidence suggested that Plaintiff's mental impairments were the cause for him failing to seek or continue treatment. T. 21. Consequently, the ALJ reasonably considered Plaintiff's failure to pursue treatment as evidence tending to show his mental impairments and limitations were not as significant as he claimed. T. 21. Neither of these findings were challenged by Plaintiff on appeal.

Moreover, the stress-related limitations described by Dr. Fabiano appear to conflict with his findings elsewhere in his opinion, where Dr. Fabiano observed that Plaintiff was mood-neutral, oriented and cooperative and that his attention and concentration were no more than mildly impaired. *See* T. 335-36.

Plaintiff's reliance on *Stadler*, 464 F. Supp.2d at 188-89, for support of his argument that the ALJ committed legal error by not further assessing his stress is misplaced. In *Stadler*, the plaintiff submitted an RFC opinion prepared by his treating psychiatrist to the Appeals Council while his appeal of the ALJ's decision was pending. The opinion stated that the plaintiff had a

marked impairment in his ability to respond appropriately to supervision and that his condition would likely to deteriorate if he were placed under stress. In its decision, the Appeals Council failed to discuss the contents of the RFC opinion, and instead only noted that the opinion had been received and that it did not provide a basis for changing the ALJ's decision. *See id.* Here, in contrast, the ALJ fully evaluated and discussed Dr. Fabiano's opinion and provided a thorough assessment of Plaintiff's mental impairments, treatment history, and the objective findings of record. Accordingly, the Court finds that the ALJ adequately evaluated the functional limitations associated with Plaintiff's mental impairments, including his ability to deal with stress. The Court further finds the RFC determination is supported by substantial evidence and thus, remand is not warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 7) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 12) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    May 6, 2019
          Rochester, New York